UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHOENIX LIFE INSURANCE COMPANY,
a New York corporation, and PHL                    Case No. 2:07-cv-15324
VARIABLE INSURANCE COMPANY, a                      consolidated with
New York corporation,                              Case No. 2:08-cv-11562

       Plaintiffs,                              HONORABLE STEPHEN J. MURPHY, III

v.

LASALLE BANK N.A., LASALLE BANK
CORPORATION, FRANK J. ELLIAS as
Trustee of THE ROSEN FAMILY
IRREVOCABLE TRUST dated September
12, 2005, ROBERT ROSEN, COVENTRY
CAPITAL 1 LLC, WILMINGTON TRUST
COMPANY, CBI FINANCIAL LLC,
RAIDER-DENNIS AGENCY, INC., and
LARRY S. CAMPAGNA,

       Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION TO DISMISS (D/Es 17, 20 in 08-cv-11562)

This is a claim by an insurance company for a declaratory judgment of rescission

against its insured, and a common law tort claim of civil conspiracy to commit fraud against

its insured, the alleged transferees of two life insurance policies and certain persons and

entities that allegedly conspired in the insured's allegedly fraudulent statements. Before

the Court is defendants' motion to dismiss all claims. For the reasons stated below, the

Court grants in part and denies in part defendants' motion to dismiss.

### FACTS

Plaintiffs Phoenix Life Insurance Company ("Phoenix") and PHL Variable Insurance

Company ("PHL") are New York corporations with their principal places of business in

Connecticut. First Amended Complaint in Case No. 08-11562 (hereinafter "Complaint")

¶¶ 1-2.  Defendant LaSalle Bank N.A. ("LaSalle N.A.") is an Illinois corporation with its principal place of business in Illinois, and defendant LaSalle Bank Corporation ("LaSalle Corporation") is a Delaware corporation with its principal place of business in Illinois. Complaint ¶¶ 3-4.  Defendant Robert Rosen is a citizen of Michigan.  Complaint ¶ 6.  The Rosen Family Irrevocable Trust ("Rosen Trust") is a trust established under the laws of Michigan.  Defendant Frank J. Ellias is Trustee.  Complaint ¶ 5.   Defendants Coventry Capital 1 LLC ("Coventry Capital") and CBI Financial LLC ("CBI") (collectively "Coventry") are Delaware corporations with their principal places of business in Delaware. Complaint ¶¶ 7, 9.  Defendant Wilmington Trust Company has been voluntarily dismissed from the case.

This suit arises from two Phoenix life insurance policies issued by Phoenix to Rosen and the Rosen Trust.  On March 27, 2006, Robert Rosen applied for the first of the two policies for $5,000,000 in universal life insurance coverage from Phoenix, with himself as insured and owner, and the Rosen Trust as beneficiary.  Complaint ¶ 15.  The application, which was signed by Rosen, contains a clause that all statements by the applicant are "full, complete, and true to the best knowledge and belief of the undersigned and have been correctly recorded."  *Id.* Rosen also executed a "Statement of Client Intent," dated the same date as the application, that contained certain questions to be answered by the client. Complaint ¶ 16.  Question 1 asks whether "non-recourse premium financing or any other method [is] being utilized to pay premiums in order to facilitate a current or future transfer, assignment or other action with respect to the benefits provided under the policy being applied for?"  *Id.*   Question 2 asks whether there is an intent to finance any of the premiums.  *Id.* Question 3 asks whether the current intent is to sell the policy in the future. *Id.*  Question 4 asks whether there has been any inducement to enter into this transaction.

*Id.* All of these questions were answered "No." *Id.* Question 5, which asks whether the purchase of the insurance or any element of the financing allows "for an open, free and competitive settlement of the contract with any firm" is answered "Yes." *Id.* The reason for purchasing the policy is stated to be estate planning. *Id.* The Statement of Client Intent is also signed by Rosen. *Id.*

On March 30, 2006, Phoenix received a replacement application, changing the owner of the policy from Rosen to the Rosen Trust. Complaint ¶ 17. The replacement application also represents that the statements within are full, complete and true to the best of the applicants knowledge and belief and is dated March 27, 2006 and signed by Rosen and by the Trustee. *Id.*

Pursuant to March 27, 2006 application, Phoenix issued Policy No. 97516049 in the amount of $5,000,000 with an effective date of April 18, 2006 (the "First Rosen Policy"). On May 5, 2006, Rosen, as insured, signed a Policy Acceptance Form that contained a declaration that the "insured . . . declares that the statements made in the application remain full, complete and true as of this date." Complaint ¶ 20.

On May 12, 2006, the Rosen Trust signed an Assignment of Life Insurance Policy as Collateral (the "First Assignment"), assigning the policy to LaSalle N.A. Complaint ¶ 21 The First Assignment indicated that the Rosen Trust has borrowed $342,148.68 from LaSalle. *Id.* Under the Assignment, LaSalle N.A. is the primary beneficiary of the policy to the extent of the principle amount of the loans made to the Rosen Trust plus accrued interest and other liabilities and has the right to assign the policy. *Id.* Default by the Rosen Trust allows LaSalle N.A. to foreclose upon and assign the policy. *Id.* Phoenix received the First Assignment two weeks later. Complaint ¶ 21-22.

On July 24, 2006, Rosen and the Trustee filed a second application with Phoenix for another $5,000,00 in universal life insurance coverage.  Complaint ¶ 23.  The second application contained the same representations as did the application for policy number 97516049.  *Id.*  The July 24, 2006 application additionally asked whether "non-recourse premium financing or any other method [is] being utilized to pay premiums in order to facilitate a current or future transfer, assignment or other action with respect to the benefits provided under the policy being applied for" and whether there is "an intention that any party, other than the Owner, will obtain any right, title or interest in any policy issued on the life of the Proposed Life Insured(s) as a result of this application?"  *Id.*  Both questions were answered "No."  *Id.*   In conjunction with the July 24, 2006 application, Rosen and the Trustee also signed a Statement of Client Intent, which contained the same language as that in the statement relative to policy No. 97516049 and contained the same responses.  Complaint ¶ 24.  Pursuant to the July 24, 2006 application, Phoenix issued Policy No. 97528338 in the amount of $5,000,000 (the "Second Rosen Policy") with an effective date of September 26, 2006.  Complaint ¶ 25.  Rosen and the Trustee again signed a "Policy Acceptance Form" dated October 4, 2006, which declared that "statements made in the application remain full, complete, and true as of this date."  Complaint ¶ 26.

On or about October 10, 2006, Phoenix received an Assignment of Life Insurance Policy as Collateral executed by the Trustee in favor of LaSalle N.A.  Complaint ¶ 28.  Around November 15, 2006 LaSalle N.A. sent a change of ownership and beneficiary forms to Phoenix.  Complaint ¶ 29.  The forms had been executed by the Trustee in favor of LaSalle N.A. and bear the dates of November 14 and 15, 2006, and refer to LaSalle N.A. as "Policy Intermediary."  *Id.*

4

On February 2, 2007, Phoenix sent letters to the Trustee and Rosen, expressing concern about these transactions and asking for an explanation.  Complaint ¶ 30.  The letters stated that Phoenix would not have issued the policies had it been informed that the policies were being obtained as part of a financing or investor ownership transaction and that the assignment of one policy and the transfer of ownership of the other was inconsistent with the statements made in the statement of client intent form.  *Id.*  The Trust replied that the intent was to provide for liquidity at Rosen's death and all statements were true.  *Id.*

On August 7, 2007, Phoenix sent a letter to LaSalle N.A. and the Trustee rescinding and voiding both policies and refunding to LaSalle N.A. the premiums paid for the policies.  Complaint ¶ 33.  The letter states that Phoenix had investigated the assignments and concluded that both policies were part of a financing and transfer of ownership transaction that was not disclosed to Phoenix despite specific questions.  *Id.*  The letter goes on to state that Phoenix would not have issued either policy had it been informed of the nature of the financing and third party ownership transaction.  *Id.*  Finally, the letter states that if LaSalle or the Trustee disagree with Phoenix's decision they should advise Phoenix in writing.  *Id.*  Neither LaSalle, Rosen nor the Trustee have responded to Phoenix's August 7, 2007 letter, and the refund checks remain uncashed.  Complaint ¶ 34.

The complaint asserts based on information and belief that at the time the policies were issued, Rosen and the Rosen Trust intended to transfer ownership of and/or a beneficial interest in the policies to a person or entity that did not have an insurable interest in the life of the insured.  Complaint ¶ 35.  It also asserts based on information and belief that Rosen, the Rosen Trust, LaSalle N.A. and LaSalle Corporation "communicated and reached understandings among themselves to establish a set of transactions meant to

5

evade legal requirements through technicalities." Complaint ¶ 36. The complaint goes on to assert that Phoenix has since learned that Coventry, Wilmington, CBI, Raider-Dennis and Campagna participated in the communications and understandings with the other defendants and participated in or encouraged or aided and abetted the misrepresentations and concealments of Rosen and the Trustee. Complaint ¶ 38. Phoenix and PHL had filed an earlier separate action against Campagna and Raider-Dennis, Inc., the insurance brokers that sold the policies to Rosen and the Rosen Trust. That case, *Phoenix Life Ins. Co. et al. v. Raider-Dennis Agency, Inc., et al.*, No. 07-cv-15324, was subsequently consolidated with this one and is still pending.

The complaint asserts three claims against defendants. The first count of the complaint seeks a declaratory judgment that the policies are null, void and rescinded ab initio. The second count seeks a declaratory judgment that the policies are rescinded because no insurable interest arose in the transferees. The third count is a claim of civil conspiracy to defraud against all defendants.

Defendants Frank J. Ellias and Robert Rosen have filed a counterclaim against Phoenix. In their counterclaim, Ellias and Rosen allege that Phoenix wrongfully rescinded the policies, that the rescission caused Rosen and the Rosen Trust to default, requiring the Rosen Trust to relinquish all of its right, title and interest in the first policy to LaSalle N.A. under the Note and Security Agreement, and that they anticipate losing their interest in the second policy when the policy matures. Based on these facts, they have counterclaimed against Phoenix for breach of contract.[1]

---

[1] In its response, PHL has appended documents and alleged various facts concerning communications between the defendants before and after the issuance of the policies. The Court will disregard these facts in deciding the motion to dismiss, because, as the plaintiffs correctly point out, the plaintiffs may not amend their complaint by means of their response brief. *See Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000)

Defendants Coventry and CBI have filed the instant motion to dismiss the complaint. The motion has been separately joined by defendants LaSalle Bank, NA, LaSalle Bank Corporation, Raider Dennis Agency, Inc., Larry S. Campagna, Frank J. Ellias and Robert Rosen.

## JURISDICTION

Jurisdiction is based on diversity of citizenship.  Plaintiffs are New York corporations, having their principal places of business in Connecticut; defendants are citizens of Illinois, Delaware and Michigan.  The amount in controversy is alleged to be in excess of $75,000.

## STANDARD OF REVIEW

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . .  be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, __; 127 S. Ct. 1955, 1966 (2007) (citations omitted).  Accordingly, Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true.  *See Minger v. Green*, 239 F.3d 793, 797 (6th Cir. 2001) (citations omitted).

In assessing a motion brought pursuant to Rule 12(b)(6), the Court must presume all well-pleaded factual allegations in the complaint to be true and draw all reasonable inferences from those allegations in favor of the non-moving party.  *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  To determine whether Plaintiff has stated a claim, the Court will examine the complaint and any written instruments that are attached as exhibits to the pleading. Fed. R. Civ. P. 12(b)(6) & 10(c).  Although the pleading standard is liberal, bald assertions and conclusions of law will not enable a complaint to survive a motion pursuant

_____

(complaint may not be amended by briefs in opposition to motion to dismiss).

to Rule 12(b)(6). *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The Court will not presume the truthfulness of any legal conclusion, opinion, or deduction, even if it is couched as a factual allegation. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

This standard requires the claimant only to put forth "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the requisite elements of the claim]." *Bell Atlantic*, 127 S. Ct. at 1965. Thus, although "a complaint need not contain 'detailed' factual allegations, its '[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. Sept. 25, 2007) (*quoting Bell Atlantic*, 127 S. Ct. at 1965). Therefore, the Court will grant a motion for dismissal pursuant to Rule 12(b)(6) only in cases where there are simply not "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 S. Ct. at 1974.

## ANALYSIS

Coventry moves to dismiss the complaint on four grounds. First, Coventry asserts that Phoenix has impermissibly split its claims by bringing two separate actions based on the same series of events. Second, Coventry argues that the claims for declaratory relief are not appropriate as to Coventry and CBI. Third, Coventry argues that plaintiff's allegations do not constitute grounds for rescission under Michigan law. Fourth, Coventry argues that Phoenix's conspiracy claims should be dismissed because they fail to sufficiently allege an actionable civil conspiracy. The Court will address each of these arguments in turn.

The first two arguments are easily dealt with. First, the claim splitting argument asserted by defendants in their briefs has been mooted by the consolidation of this suit with the earlier suit by plaintiffs against Raider-Dennis Agency, Inc. and Larry S. Campagna for

8

damages based upon their actions in brokering the insurance policies at issue here.  At the oral hearing on this matter counsel for Coventry conceded that this argument is moot. Second, plaintiffs concede Coventry and CBI's second argument, that plaintiffs' claims for declaratory relief should be dismissed because Coventry and CBI did not purchase and do not own the policies at issue and therefore there can be no claim for rescission against them.  In their response, plaintiffs state that the complaint does not state a claim for declaratory judgment against Coventry and CBI, but rather only against Rosen, the Rosen Trust and LaSalle.  Thus, the Court will grant Coventry's motion in this regard and dismiss any claims for declaratory judgment against Coventry and CBI to the extent any such claims exist.

I.   Should Phoenix's Claims For Rescission Be Dismissed?

Despite the fact that plaintiffs concede that there are no claims for declaratory judgment of rescission against Coventry or CBI, Coventry's brief in support of its motion to dismiss goes on to assert substantive arguments as to why those claims should be dismissed as a matter of law against all defendants.  At the hearing on its motion, Coventry argued that it is seeking to dismiss the declaratory judgment claims against all the defendants because those claims are the predicate for the conspiracy claims that have been asserted against Coventry and CBI.  This seems to be a bit of a logical stretch, but the defendants Rosen, the Rosen Trust and all LaSalle defendants have separately joined in Coventry's motion to dismiss, so the Court will address Coventry's arguments on the declaratory judgment claims.

Coventry argues that Phoenix's declaratory judgment claims in Count I and II of the complaint should be dismissed because, first, the complaint fails to allege grounds for rescission based on fraud or misrepresentation; and, second, that there are no facts alleged

which would support rescission based on lack of insurable interest *ab initio*. The Court will examine each of these arguments in turn.

A. Should plaintiffs' declaratory judgment claims for rescission of the two Rosen policies on the basis of misrepresentations in the policy applications be dismissed?

Coventry argues that all claims for rescission based upon alleged misrepresentations in the applications for the two policies should be dismissed because only material misrepresentations contained in the application itself may be used to rescind the policy, and plaintiffs have alleged no misrepresentations in the First Rosen Policy; Coventry further argues that the only two alleged misrepresentation in the application for the Second Rosen Policy are not actionable as a matter of law.

As to the First Rosen Policy, Coventry maintains that plaintiffs' claim for rescission based on misrepresentation fails because the only alleged misrepresentations were contained in the Statement of Customer Intent, which was not part of the application for the First Rosen Policy, and the Customer Acceptance, which was executed after the policy issued. Coventry argues that Michigan law precludes plaintiff from relying on statements that are not contained in the written application or endorsed on or attached to the policy.

Michigan law provides specifically that an insurance company may only seek rescission of an insurance policies on the basis of statements that are contained in the insurance application itself and which are "endorsed upon or attached to the policy when issued." M.C.L. § 500.4016 provides that:

> There shall be a provision that all statements made by the insured, shall, in the absence of fraud, be deemed representations and not warranties, and that no such statement shall avoid the policy unless it is contained in a written application and a copy of such application shall be endorsed upon or attached to the policy when issued.

Furthermore, section 500.2226 of the Insurance Code provides as follow:

10

(2) Every policy of life insurance hereafter issued or delivered within this state by any life insurer doing business within this state shall contain the entire contract between the parties and nothing shall be incorporated therein by reference to any constitution, bylaws, rules, application, or other writing unless the same are endorsed upon or attached to the policy when issued.

Phoenix's claims for rescinding the First Rosen Policy are based solely upon representations made by Rosen or the Trust in documents that were not endorsed upon or attached to the policy when issued. Therefore, under the plain language of M.C.L. §§ 500.2226 and 500.4016, they cannot be grounds for rescission in Michigan. Whether or not they were part of the "application process" is irrelevant: if they are not attached to the policy when issued they cannot form the basis for rescission.

Phoenix argues that the complaint still states a claim for rescission of the First Rosen Policy because common law has always permitted the avoidance of contracts, including insurance contracts, procured by fraud, and that the Statement of Client intent is admissible as evidence to establish fraud in the procurement of the policy even though it was not attached to the insurance policy when issued. The Michigan Supreme Court, however, has already rejected Phoenix's argument in *New York Life Ins. Co. v. Hamburger*, 174 Mich. 254, 257-58 (1913). Furthermore, *Wiedmayer v. Midland Mutual Life Ins. Co.*, 414 Mich. 369 (1982), cited by Phoenix in support of its argument, does not overrule *Hamburger*. The Court in *Wiedmayer* merely concluded the insurer could invoke a statute to void an insurance policy despite the absence of an express contractual right to do so. *Id.* at 374. The court did not conclude that allegations of common law fraud supersede the requirements of section 500.4016. *Id.* at 375-76.

Because Michigan law requires a claim for rescission on the grounds of material misrepresentations to be based solely on representations endorsed on or attached to the policy at issue, the Court will dismiss Phoenix's claims for rescission of the First Rosen

11

Policy to the extent that those claims are based upon the insured's alleged misrepresentations in the application process for the First Rosen Policy. The Court will also dismiss any claims for rescission of the Second Rosen Policy based upon any alleged misrepresentations that were not actually attached to or endorsed upon the policy when issued.

As to the Second Rosen Policy, there are two alleged misrepresentations that were in the application for insurance that was attached to the policy when issued, and therefore could form the basis for dismissal in the proper circumstances. As to these statements, Coventry argues that the asserted misrepresentations are not actionable under Michigan law because they are not material misrepresentations.

Under Michigan law, rescission is only permitted when an insured makes a material misrepresentation in the application for insurance. *Old Life Ins. Co. v. Garcia*, 411 F.3d 605, 611 (6th Cir. 2005), *vacated in part*, 418 F.3d 546 (2005) *(citing Lake States Ins. Co. v. Wilson*, 586 N.W.2d 113 (Mich. Ct. App. 1998)). A misrepresentation in the insurance context is limited to "a statement as to past or present fact." M.C.L. § 500.2218(2).

The first alleged misrepresentation in the second application contained the question "[i]s there an intention that any party, other than the Owner, will obtain any right, title or interest in any policy issued on the life of the Proposed Life Insured(s) as a result of this application?" Amended Complaint ¶ 23. To this question, the insured answered "[n]o" and the question and answer are attached to the policy. Coventry argues first, that plaintiffs fail to allege that this is a misrepresentation because they fail to allege that Rosen or the Rosen Trust intended to convey a right, title or interest in the Second Rosen Policy when they completed the application on July 24, 2006, and instead simply allege that the intent to transfer existed at the time the Second Rosen Policy issued. The Court does not find

this argument persuasive.  While the complaint alleges in paragraph 35 that Rosen and the Rosen Trust intended to transfer the policies at the time they were issued, it also alleges a claim for rescission based upon material misrepresentations in the application process (Complaint ¶ 41) and alleges that the representations made in the "application process" for the First and Second Rosen Policies were untrue at the time they were made. (Complaint ¶¶ 49-52).  In considering a motion to dismiss, the Court is obliged to read the allegations in a complaint in the light most favorable to the nonmoving party, and thus, read in this light, the Court finds the complaint sufficiently alleges that the intent to transfer existed a the time of the application.  The question asks whether, at the time of the application, there was a present intention on the part of the insured to transfer any right, title or interest in the policy to a third party.  The question does not ask whether the policy *will* be transferred, which would be a question about future intent.

Further, Coventry's argument that a collateral assignment is not a "right, title or interest" in the policy is also not persuasive.  A collateral assignment is an interest in the policy, specifically a security interest in the policy proceeds.  *See Emmons v. Lake States Ins. Co.*, 193 Mich. App. 460, 464 (1992).  The policies themselves provide that the interests of an assignee of the owner, including a collateral assignee, takes precedence over the interest of any beneficiary not irrevocably named or any contingent owner.  First Rosen Policy § 18, attached as Exhibit A to Motion for Summary Judgment; Second Rosen Policy § 18, attached as Exhibit B to Motion for Summary Judgment.  Since a collateral assignee has rights under the terms of the policies at issue, the argument that the collateral assignee has no "interest" in the policies is not persuasive.  Further, the question in the application asks about any "right, title or interest" and is not by its terms limited to ownership interest as contended by defendants.  In fact, if the question were limited to

13

ownership interests, the question would have only asked about title, since such a construction makes the words "right" and "interest" redundant.  Finally, Rosen and the Trust have counterclaimed asserting that the plaintiff's actions have caused LaSalle to foreclose on the First Rosen Policy and, as a result, LaSalle now owns the policies.  This strongly suggests that at least LaSalle and the Trust believe that LaSalle received an enforceable interest in the policies.  While defendants are correct that ambiguities are construed in favor of the insured, the construction they urge would read ambiguity into a question where no ambiguity exists.  The insured and the Rosen Trust answered "no" to the question at issue, and a question of fact therefore exists as to whether the statement was a misrepresentation.  Therefore, the Court will deny defendants' motion to dismiss plaintiffs' claim on this basis.

The second alleged misrepresentation in the application for the Second Rosen Policy is that Rosen and the Rosen Trust answered "[n]o" to the question "[i]s non-recourse premium financing or any other method being utilized to pay premiums in order to facilitate a current or future transfer, assignment or other action with respect to the benefits provided under the policy being applied for?"  Complaint ¶ 23.  Coventry argues that "on its face, this question can only be answered in the negative" because the Second Rosen Policy did not issue until September 26, 2006, more than two months after the application was submitted. In light of this fact, Coventry argues that it is not plausible to contend that premiums were "being paid" at the time of the application more than two months earlier.

The interpretation of an insurance policy is a question of law for the Court.  *Morley v. Automobile Club*, 458 Mich. 459, 465 (1998).  The terms of a clear and unambiguous provision are not open to construction and must be applied as written.  *Michigan Mutual Ins. Co. v. Dowell*, 204 Mich. App. 81, 87 (1994) (*citing Clevenger v. Allstate Ins. Co.*, 443

14

Mich. 646, 654 (1993)).  Ambiguous provisions, however, are "open to construction and questions of interpretation may well present jury questions."  *Murphy v. Seed-Roberts Agency, Inc.*, 79 Mich. App. 1, 8 (1977) (*citing Clark v. Hacker*, 345 Mich. 751 (1956)); *see also D'Avanzo v. Wise & Marsac., P.C.*, 223 Mich. App. 314, 319-320 (1997) (holding that where there is more than one reasonable interpretation of a contract provision, the ambiguity creates a question of fact for the jury).  A provision is ambiguous "when its terms are reasonably and fairly susceptible to multiple understandings and meanings." *Equitable Life Assurance Soc. v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998) (citations omitted).

The Court finds two canons of construction to be particularly relevant to interpreting this contract.  First, ambiguities in an insurance policy are to be resolved against the insurer and in favor of the insured, *Clevenger v. Allstate Ins. Co.*, 443 Mich. 646, 654 (1993); and, when a contract is ambiguous, the Court may consider extrinsic evidence to explain the ambiguity, *Goodwin, Inc. v. Coe*, 392 Mich. 195, 205-06 (1974).  Second, insurance contracts "must be construed as a whole, and, if possible and practicable, all ... parts are to be harmonized and each part given force and effect."  *Caine v. John Hancock Mutual Life Ins. Co.*, 313 F.2d 297, 302 (6th Cir. 1963) (citation omitted).

This motion places these two canons at loggerheads with each other.  The question of, "[i]s . . . premium financing . . . being utilized," cast as it is in the present progressive tense, would often be read to inquire whether premium financing is being used at the time the question is answered, as Coventry's proposed construction suggests.  This would satisfy the first canon noted above by favoring the insured.  But it would violate the second canon by essentially rendering the question meaningless since premiums are never "being paid" at the time that an application for new insurance is filled out.

15

On the other hand, it is also common English usage to cast a question about a person's future intentions in the present progressive.  For instance, the question "are you paying by check?," when asked at the beginning of a restaurant dinner, would typically be understood as an inquiry whether the addressee is currently planning on paying by check at the conclusion of the meal.  This is consistent with Phoenix's construction of the question at issue here as encompassing a present plan on the part of the insured [not] to "utilize" premium financing in the future.  This  construction would have the advantage of fulfilling the second canon noted above, by giving effect to otherwise superfluous language.  But the construction would violate the first canon, by adopting an interpretation that favors the insurer over another linguistically permissible interpretation that would favor the insured.

Thus, there is no single interpretation of the premium financing question that would qualify as the correct one under all the applicable legal rules.  Under these circumstances, the Court finds that the question and answer are ambiguous, and therefore not appropriate for the court to consider on a motion to dismiss.  *See Zbiciak v. Herald Co.*, 49 F. Appx. 501, 504 (6th Cir. 2002) (ambiguity in contract creates jury question).  Therefore, the Court denies Coventry's motion to dismiss Phoenix's claim for rescission on the grounds of misrepresentation as to the question and answer regarding non-recourse financing in the application for the Second Rosen Policy

B.  Should Count II of the Complaint, Alleging a Claim For Rescission
     Based Upon A Lack Of Insurable Interest, Be Dismissed?

Count II of the complaint seeks rescission of the policies on the grounds that there was no insurable interest when the policies were issued.  Michigan law provides that insurance contracts issued to a party without an insurable interest in the life of the insured

16

are void. *Sun Life Assur. Co. of Canada v. Allen*, 270 Mich. 272, 284 (1935).[2]  Under Michigan law, an insurance policy "founded upon mere hope and expectation and without some interest in the property, or the life insured, are objectionable as a species of gambling, and so have been called wagering policies .. and are therefore void." *Crossman v. American Ins. Co.*, 198 Mich. 304, 308 (1917).  An insurable interest in the context of life insurance is "a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured." *Dow Chemical Co. v. U.S.*, 250 F. Supp. 2d 748, 757 (E.D. Mich. 2003) (*quoting Warnock v. Davis*, 104 U.S. 775, 779 (1881)).

Coventry argues that Count II of the complaint should be dismissed because there are no facts alleged that support a rescission based on a lack of insurable interest.  Coventry asserts that the only facts that are alleged in support of a lack of insurable interest are the premium finance transaction itself, which Coventry argues is insufficient as a matter of law. Coventry also argues that the assignment of life insurance policies to secure creditors has

---

[2] The facts of *Sun Life* illustrate the policy concerns behind the insurable interest requirement.  *Sun Life* involved a partnership that had taken out insurance policies on two men that were made partners at the same time the partnership took out the insurance policies on their lives:

> The mortality among the partners of Charles Elson was rather high. Federowitz, a partner, died March 21, 1922, at the age of thirty-three, of either lobar pneumonia or delirium tremens, with $27,500 of life insurance payable to Elson, Goodstein, and Allen, for which application had been made on February 25, 1921. Stanislaus Bogacki, another partner, died at the age of forty-four from a cause given in his death certificate as 'fall down stairs in home, fracture of skull, alcoholism,' with $15,000 of insurance payable to the firm, the policy having been issued only three months after the death of Federowitz. Bogacki lived less than three years after his policy was issued. The record is silent as to Allen and Goodstein; all we know is they did not appear as witnesses in the instant case.

*Sun Life*, 270 Mich. at 282.

been deemed valid for over 100 years (citing *Warnock v. Davis*, 104 U.S. 775, 781 (1881); *McDonald v. Birss*, 99 Mich. 329, 332 (1894)) and that a subsequent absolute assignment of a life insurance policy for consideration to someone who lacks an insurable interest in the insured is also valid in Michigan. *Prudential Ins. Co. v. Liersch*, 122 Mich. 436, 438 (1899). Coventry also points out that the plaintiffs themselves provide premium financing to policy owners. Coventry also points out that premium financing is expressly permitted under Michigan law. (citing M.C.L. § 500.1502). Therefore, Coventry argues, there is no legal basis for plaintiffs claim that the Rosen Trust's assignment of the policies to LaSalle Bank as collateral for a premium finance loan states a cause of action.[3]

It is clear that Rosen and the Rosen Trust have an insurable interest in the life of Robert Rosen. The question before the Court is whether the alleged agreements make the contract between the plaintiff and the original policy holders, Rosen and the Trust, merely a cloak for a "wagering contract," which would be impermissible.

The seminal case on the effect of an assignment on the validity of an insurance contract is *Warnock v. Davis*, 104 U.S. 775 (1881). *Warnock* involved an insured who purchased life insurance in the amount of $5,000. *Id.* at 775. The agreement held that nine-tenth's of the amount due and payable under the policy at the time of the insured's death would be the absolute property of the trust company, with the remaining one-tenth subject to the insured's disposition. *Id.* at 775-76. In return, the trust company agreed to

---

[3] Phoenix argues that before the policies ever issued, and before Rosen and the Rosen Trust formally transferred their legal interests in the policies, they had already transferred their equitable interest in the policies to other defendants who lacked insurable interests in the policies. Phoenix does not cite any authority for this proposition, and the Court is aware of no authority that applies the doctrine of equitable conversion other than in the context of real estate.

maintain the insurance policy at their sole expense.  *Id.* at 776.  The insured died one year

later, and the trust company collected the policy amount and remitted one-tenth of it to the

widow of the insured.  *Id.* at 777.  The representative of the estate sued the trust company

for the balance, and the trust company defended on the basis of the assignment

agreement.  *Id.* at 777-78.  The plaintiff argued that the assignment was not valid.  *Id.* at

778.  The trial court granted judgment to the defendant and the plaintiff appealed.  *Id.*

The Supreme Court reversed, and held that because the association did not have an

insurable interest in the life of the policy holder, the assignment of the policy was invalid

beyond what was required as security for the trust association's payment of the premiums.

*Id.* at 781.  The Court held that, beyond that, the purported assignment was a wager policy,

and invalid.  *Id.*  The Court remanded the case with direction to enter judgment for the

plaintiff for the amount collected from the insurance company, with interest, after deducting

the sums already paid to the widow and the sums advanced by the defendants for premium

payments.  *Id.* at 782-83.

The holding of *Warnock* was later refined by the case of *Grigsby v. Russell*, 222 U.S.

149 (1911).  *Grigsby* involved a bill of interpleader brought by an insurance company to

determine whether the proceeds of a life insurance policy issued to the deceased insured,

Burchard, should be paid to the insured's administrator or to an assignee.  *Id.* at 154.  After

Burchard had paid two premiums on his policy and the third was overdue, he asked Dr.

Grigsby to buy the policy.  *Id.*  Burchard sold the policy to Grigsby for $100 and Grigsby's

agreement to pay the premiums when due.  *Id.*  The Sixth Circuit Court of Appeals held

that, under *Warnock*, the assignment was only valid to the extent of the money actually

given for it and the premiums subsequently paid.  *Id.*

The Supreme Court reversed, and held that the concerns underlying the insurable interest rule, that it prevents a wager on a human life made by a person that has no interest in the continuation of that life, did not apply in the case of a subsequent assignment. *Id.* at 155. It distinguished *Warnock* by stating that "cases in which a person having an interest lends himself to one without any, as a cloak to what is, in its inception, a wager, have no similarity to those where an honest contract is sold in good faith." *Id.* at 156.

Finally, the Michigan case of *McDonald v. Birss*, 99 Mich. 329 (1894) makes it clear that the assignment of a life insurance policy to secure creditors is valid, and cannot be voided for lack of insurable interest.

These cases, despite their age, appear to state the current law in Michigan. Applying *Warnock* and *Grimsby* shows that a complete assignment of an insurance policy to LaSalle before or on the same day as the policy was issued would violate the insurable interest requirement. Under *Grimsby*, a subsequent assignment of the entire proceeds of the insurance policy would *not* violate the insurable interest requirement. Under *Birss*, an assignment of only a *security interest* in the policy would *not* violate the insurable interest requirement, even if that assignment was done at the same time as or even before the policy was issued. Finally, it appears that it *would* violate the insurable interest requirement if, at the time the policies issued, the insured intended to transfer the entire proceeds of the insurance policies to LaSalle, because such an agreement would be a cloaked "wagering contract" under *Warnock* and *Grimsby*. *See* Couch on Insurance 3d § 36.79 (the consensus is that an assignment is void if it is made in bad faith in order to circumvent the law on insurable interest). The test for determining whether the assignment is valid is the intent of the parties. Couch on Insurance 3d § 36:87.

20

Applying this law to the allegations of the complaint, it appears that the complaint states a valid claim for rescission based on the lack of insurable interest. Reading the allegations of the complaint in the light most favorable to the plaintiff, the complaint alleges that at the time the policies were issued the insured agreed to transfer not just a security interest, but actual ownership or the right to receive the proceeds of one or both of the policies, to entities that did not have an insurable interest in Robert Rosen's life, and that at least one policy was so transferred. If in fact the defendants made such a contract at or before the time the policies issued, such an agreement would violate the Michigan law requiring an insurable interest at the time the policies were issued. Thus, the Court finds that these allegations state a claim for rescission for lack of insurable interest and therefore the Court will deny defendants' motion to dismiss Count II of the Complaint.

III.   Should Count III Claim for Civil Conspiracy Be Dismissed?

Count III of the complaint alleges a civil conspiracy on the part of all defendants to defraud Phoenix into issuing the policies. Coventry has moved to dismiss this count under Rule 12(b)(6) for failure to state a claim, and for failure to plead civil conspiracy with particularity under Rule 9(b) of the Federal Rules of Civil Procedure.

A civil conspiracy is a combination of two or more persons to accomplish, by concerted action, either a criminal or unlawful purpose, or a lawful purpose by criminal or unlawful means. *Temborius v. Slatkin*, 157 Mich. App. 587, 599-600 (1986). A claim for civil conspiracy must be based on an underlying actionable tort. *Advocacy Org. for Patients & Providers v. Auto Club Ass'n*, 257 Mich. App. 365, 384 (2003). The underlying alleged tort in this case is the fraud that Phoenix claims induced it to issue the policies.

Fraud claims must be alleged with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. Although conspiracy is not listed specifically in Rule 9(b) as a fact that

21

must be alleged with particularity, Coventry argues that conspiracy claims must also be pled with particularity, citing *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) and *Perry v. Se. Boll Weevil Eriadication Found.*, 2005 WL 3051563 at *8 (6th Cir. Nov. 15, 2005).

In order to satisfy the requirements of Rule 9(b) with regard to fraud, a party must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of [the other party]; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (quoting *Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1385 (W.D. Mich. 1992)).   The complaint clearly does this much:  the precise statements that plaintiff claims are fraudulent are recited verbatim in the complaint, along with an identification of the persons making the statements, and the dates of the statements.  The complaint also alleges that Rosen and the Trust made the statements with the intent to defraud, and that the plaintiff was injured because it would not have issued the policies if the statements had not been made.

Coventry challenges the sufficiency of the conspiracy allegations.  The following paragraphs constitute the conspiracy allegations in PHL's complaint:

49.   On or before December 19, 2005, more than four months prior to the March 27, 2006, application for the First Rosen Policy, Rosen and Campagna sought and Coventry offered to arrange non-recourse premium financing for life insurance policies to be purchased by Rosen and/or the Rosen Trust.

50.   During the application process for the First Rosen Policy, Phoenix asked whether non-recourse financing is being utilized to pay premiums in order to facilitate a current or future transfer, assignment or other action with respect to the benefits provided under the policy being applied for, or whether there was any intent to do so; both Rosen and the Trustee answered "No" in writing, and declared their statements to be complete and true to the best of their knowledge.

5I.   During the application process for the Second Rosen Policy, Phoenix again asked whether non-recourse financing is being utilized to pay

premiums in order to facilitate a current or future transfer, assignment or other action with respect to the benefits provided under the policy being applied for, or whether their was any intent to do so; both Rosen and the Trustee again answered 'No" in writing, and declared their statement to be complete and true to the best of their knowledge.

52.   Relying on the representations of Rosen and the Trustee, Phoenix issued the First and Second Rosen Policies; those representations have turned out to be false.

53.   The defendants knew about the plan to use non-recourse financing to pay premiums in order to facilitate a transfer, assignment or other action with respect to the benefits provided under the Phoenix policies being applied for and to not disclose the plan to Phoenix; knew about the misrepresentations to Phoenix in furtherance of said plan; and participated in and/or encouraged and/or aided and abetted the implementation of said plan to defendants' mutual advantage and Phoenix's detriment.

54.   Defendants Coventry, Wilmington, CBI, Raider-Dennis, and Campagna have benefited from implementation of said plan, among other ways, through the splitting among themselves of hundreds of thousands of dollars in commissions paid by Phoenix relating to issuance of the First and Second Rosen Policies, commissions Phoenix would not have paid but for the misrepresentations which led it to issue said Policies.

55.   Defendants LaSalle N.A. and LaSalle Corporation have benefited from implementation of said plan, among other ways, through the making of loans for the payment of premiums on the First and Second Rosen Policies, which loans have been secured by said Policies, and through the assignment and/or transfer of the beneficial interest in said Policies from defendants Rosen and the Rosen Trust to LaSalle N.A. and/or LaSalle Corporation.

56.   Defendants Rosen and the Rosen Trust have benefited from implementation of said plan, among other ways, through the obtainment of insurance policies from Phoenix they would not have obtained but for their misrepresentation during the application process, and the receipt of financial and other consideration from some or all of the other defendants.

57.   On information and belief, Raider-Dennis and Campagna have been in communication with other defendants including, but not necessarily limited to, Coventry and the Trustee regarding a strategy to thwart Phoenix's efforts to rescind the First and Second Rosen Policies and be reimbursed for commissions paid regarding said Policies.

58.    As a result of defendants' conspiracy to defraud, Phoenix has been injured by having paid some $549,272.90 in commissions on insurance policies which were issued in reliance upon misrepresentations and thus were void ab initio, and having incurred and continuing to incur substantial costs and expenses in order to undo the transactions that resulted from defendants' conspiracy to defraud.

Reviewing the forgoing allegations in the light most favorable to the plaintiff, it appears that Phoenix has adequately alleged the time, place and manner of the allegedly fraudulent statements and the defendants' alleged participation in them.  The plaintiff alleges that Rosen and the Rosen Trust made specific representations in their applications for the policies which were false at the time they were made.  The plaintiff further alleges that the defendants knew about the misrepresentations, they participated in, encouraged or aided and abetted those misrepresentations; that the policies would not have been issued had the misrepresentations not been made; and that the defendants benefitted from the misrepresentations by splitting among themselves several hundred thousand dollars in commissions, paid by the plaintiff as a result of the policies being issued.   Therefore, the Court finds that the complaint adequately states a claim for civil conspiracy as to all defendants.

The cases cited by Coventry do not dictate dismissal under these facts.   Instead, as the following discussion indicates, the cases suggest dismissal is appropriate where the complaint fails to allege any facts from which a jury could conclude that a conspiracy existed, which is not the case here.

In *Perry v. Se. Boll Weevil Eradication Found.*, 2005  WL 3051563 (6th Cir.  Nov. 15, 2005), plaintiffs alleged that they were injured by the spraying of malathion that occurred between July 15, 2000 and December 31, 2001 and that the defendants conspired to do so, but the plaintiffs did not set forth any additional factual allegations indicating when, where or how the defendants conspired to spray the malathion in a manner damaging to

the plaintiffs.  *Id.* at *8   Therefore, the court found that they had failed to plead, with particularity, their conspiracy claim.  *Id.*

In *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502 (7th Cir. 2007), the Seventh Circuit affirmed an order of the district court dismissing claims of tortious interference with economic advantage, interference with fiduciary relationship and civil conspiracy for failure to meet the heightened pleading requirement of Rule 9(b).  The plaintiff, Borsellino, was a partner in a business that facilitated stock trading through remote access to the NASDAQ. *Id.* at 505.  His former partners got together and formed another business for the purpose of permitting easier remote access through various locations. *Id.* at 506.  Borsellino claimed that these former partners acted behind his back and used partnership resources to create the new venture, and that as a result he had rights in the new venture, in which Goldman Sachs became part-owner.  *Id.*  Borsellino sued Goldman Sachs, claiming that it had conspired with the plaintiff's former business partners to commit deprive him of his rightful interest in the new business.  *Id.*  The complaint alleged that Goldman was aware that Borsellino had an interest in the venture and conspired with the other partners to wait until the partnership with Borsellino could be terminated before making an investment.  *Id.*

As to the claims of tortious interference with economic advantage and interference with fiduciary relationship, the Seventh Circuit held that the allegations that Goldman Sachs conspired with the partners to cut the plaintiff out of the deal "made neither economic nor common sense" therefore plaintiff did not plausibly state a claim for a conspiracy, and the allegation that Goldman Sachs "accepted the benefits" of a breach of fiduciary duty failed because the complaint failed to allege how the breach could benefit Goldman Sachs. *Id.* at 508-09.  As to the claim of civil conspiracy, the Seventh Circuit held that claim failed because the complaint failed to state with particularity the circumstances constituting the

conspiracy between Goldman Sachs and the plaintiff's former partners. *Id.* at 509. The allegations in the complaint were merely that Goldman Sachs participated in testing the partners' system for SEC compliance and did not invest in the system until the principals had cut off business ties with the plaintiff. *Id.* The Seventh Circuit held that "[t]his fact and a handful of unreasonable inferences are not enough to satisfy Rule 9(b)'s particularity requirements" and affirmed the dismissal of the civil conspiracy claim against Goldman Sachs. *Id.*

Likewise, in *Spadafore v. Gardner*, 330 F.3d 849 (6th Cir. 2003) the Sixth Circuit affirmed summary judgment in a 42 U.S.C. § 1983 claim where the plaintiffs had "submitted no evidence, circumstantial or otherwise, suggesting that the defendants had a single plan when they made the allegedly false statements." *Id.*

Finally, the case of *Tramontana v. May*, 2004 WL 539065 (E.D. Mich. March 16, 2004), cited by Coventry in support of its argument that dismissal is appropriate here, actually undermines Coventry's argument. While the court there did hold that conspiracy claims grounded in fraud must satisfy the particularity requirements of Rule 9(b), the court in that case found the allegations sufficient under Rule 9(b) where the complaint alleged that several individuals and entities "illegally, maliciously, and wrongfully conspired with with one another with the intent to and for the illegal purpose of: A. Fraudulently inducing [the counterplaintiffs] to invest in Graminex; and B. Assisting [counterdefendant] Tramontana in his breaches of fiduciary duty to [counterplaintiffs]" *Tramontana* at *8. The court held that because the "averments of fraud in this count of the counterclaim refer to the specific allegations already set forth in Count I alleging fraudulent inducement," they were pleaded with sufficient specificity to satisfy Rule 9(b). *Id.*

26

Here, as in *Tramontana*, the precise misrepresentations, the dates the alleged misrepresentations were made, and the persons who allegedly made the misrepresentations are all stated with particularity, while the complaint also sets forth facts from which a factfinder could find circumstantial evidence of a conspiracy, including facts showing that the other defendants were aware of the applications before they were made and facts that tend to show that the other defendants, including Coventry, benefited from the alleged misrepresentations. The cases cited by defendants do not require anything more. Specifically, the cases cited by defendants do no require the "time, place, manner" of the actual conspiracy, the dates of meetings and so forth. Thus, the Court finds that Phoenix's conspiracy claims are sufficiently specific for purposes of Rule 9(b) of the Federal Rules of Civil Procedure.

Defendants argue that a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate actionable tort, and argue that because the plaintiffs have not alleged any actionable tort theories their claim for civil conspiracy also fails. The Court, however, has found that the Complaint states a prima facie claim for misrepresentation as to the Second Rosen Policy. Furthermore, while the fact that the alleged misrepresentations are not attached to the policies defeats a claim for rescission under the Michigan statute, defendants have offered no authority that such misrepresentations cannot form the basis for a separate tort action, provided the elements for common law fraud are otherwise met. The Michigan statute merely says that fraud is not a basis for avoiding the policy if the alleged fraudulent statements are not attached to the policy - it does not say that no claim can be based on the allegedly fraudulent statements.

Defendants, citing *Bell Atl. Corp.*, 127 S. Ct. at 1965, argue that plaintiffs' conspiracy claim is not plausible. Coventry argues that the claim rests on the premise that LaSalle

Bank, in conspiracy with the other defendants, would extend loans exceeding $750,000 secured by fraudulently procured life insurance policies and it is not credible to argue that LaSalle Bank would accept such tainted collateral, together with potential legal liability, to secure valuable loans. This argument highlights the distinction between this case and *Bell Atlantic*, which also involved a motion to dismiss in the context of pleading a civil conspiracy, albeit not in the context of fraud.

In *Bell Atlantic*, the Court found that the complaint had failed to state a claim for civil conspiracy under Section 1 of the Sherman Act where the only facts alleged by the plaintiffs in support of their conspiracy claim was parallel conduct, and conscious parallelism does not, as a matter of law, violate the Sherman Act absent an agreement between the defendants. *Id.* at 1970-71. Further, the Court found allegations that the defendants engaged in parallel conduct did not raise an inference of agreement in that case because the defendants had every economic incentive to act the way they did even without an agreement to do so. The Court held that where the complaint fails to plead facts that suggest a conspiracy, and, under the facts alleged an actual conspiracy is implausible, the complaint fails to state a claim for civil conspiracy. *Id.* at 1974

Here, in contrast to those in *Bell Atlantic*, the conspiracy allegations are not implausible. Instead, the complaint alleges that the defendants communicated among themselves prior to the issuance of the policies, they "participated in and/or encouraged and/or aided and abetted the implementation of said plan to defendants' mutual advantage and Phoenix's detriment," that they benefited from the issuance of the policies in sharing several hundred thousand dollars of commissions that would not have been paid if the policies had not been issued, and that the policies would not have been issued absent

fraud on the part of the insured.  These allegations may not be factually supported, but they are not "implausible" under *Bell Atlantic*.

The Court has considered the other arguments made by defendants in support of their motion to dismiss Count III, and finds them to be variations of the argument already addressed.  It is sufficient to state that the Court has considered each and every one and finds them to be disposed of by the reasoning above.  Therefore, for the reasons stated above, the Court will deny defendants' motion to dismiss Count III of the complaint.

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** defendants' motion to dismiss the complaint.  Defendant's motion to dismiss as to claims for declaratory judgment as to defendants Rosen and the Rosen Trust is **GRANTED IN PART AS FOLLOWS**:  Plaintiffs' claims for declaratory judgment and rescission in Counts I and II are **DISMISSED** as to defendants Coventry and CBI and plaintiffs' claim for declaratory judgement of rescission in Count I is **DISMISSED** as to Rosen and the Rosen Trust as to the First Rosen Policy.  Defendants' motion to dismiss in all other regards is hereby **DENIED**.


s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 30, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 30, 2009, by electronic and/or ordinary mail.

Alissa Greer
Case Manager